**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | |
|---|---|
| **SWEET ONION CHRISTIAN LEARNING CENTER**, **INC.,** <br><br> and <br><br> **GADY YOUMANS,** <br><br> *Plaintiffs,* <br><br> v. <br><br> **VIDALIA CITY SCHOOLS,** <br><br> **SANDY REID,** in her official and personal capacities as Superintendent of Vidalia City Schools, <br><br> and <br><br> **ANDY BLOUNT, SADIA AJOHDA, BRITTNEY BLACK, FRED GODBEE, and JULEE TORRANCE,** in their official capacities as members of the Vidalia City Board of Education, <br><br> *Defendants.* | Civil Action No.: _____ <br><br> **VERIFIED COMPLAINT** |

**INTRODUCTION**

1.      For over a decade, Sweet Onion Christian Learning Center, Inc. (the "Center") has provided optional, free, off-campus religious instruction to students at Vidalia High School ("Vidalia High"). This released-time program continued without problems until the Center's Executive Director, Reverend Gady Youmans,

1

complained about a proposed tax increase on his Facebook page. Soon after, school officials canceled the released-time program, harming the ministry and leaving Vidalia students without any free religious education option. The officials did so because they didn't like Rev. Youmans publicly criticizing the government. That violates the First Amendment.

2.      Nor do we need to guess the reasons for the cancellation. When Rev. Youmans asked, Defendant Sandy Reid, Superintendent of Vidalia City Schools, was clear and direct: she and the Vidalia City Board of Education (the "Board") canceled the program because of Rev. Youmans' Facebook posts criticizing the tax increase. After learning about the posts, Superintendent Reid secretly investigated the Center and learned an unremarkable fact—the Center, a Christian ministry, provides Christian education. This led her to report to the Board that, in addition to the problems with the Facebook posts, Rev. Youmans' instruction "reflected a particular interpretation of the Bible" that wasn't presented in a "neutral or well-balanced manner." Either way, Defendants punished Rev. Youman, his ministry, and the students at Vidalia High simply because Defendants disagreed with Rev. Youman's constitutionally protected expression.

3.      Under the First Amendment, Rev. Youmans had a clearly established right both to criticize a proposed tax increase and to teach the Bible from his religious perspective. By punishing him and his ministry for his criticism and religious instruction, the Board and Superintendent Reid violated that right. Our Constitution demands better, and Rev. Youmans and the Center ask that these violations be remedied and their First Amendment rights fully restored.

## JURISDICTION & VENUE

4.      This civil-rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5.      This Court has subject-matter jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

6.      This Court has supplemental jurisdiction over the related state law claim under 28 U.S.C. § 1367.

7.      This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343, the requested declaratory relief pursuant to 28 U.S.C. §§ 2201-02, the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65, and costs and attorneys' fees under 42 U.S.C. § 1988.

8.      Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b) and LR 2.1(b) because all of the events or omissions giving rise to the claims alleged in the Complaint occurred in this district and division.

## PLAINTIFFS

9.      Plaintiff Sweet Onion Christian Learning Center, Inc. is a domestic nonprofit corporation organized under Georgia law.

10.     The Center is a Christian ministry that operates a released-time education program for high school students in Toombs County, Georgia. Through the released-time program, students at public schools may take religious courses taught by the Center off-campus during school hours.

11.     The Center is governed by a three-person board of directors.

12.     The Center employs an Executive Director, who also serves as a teacher, and a second teacher.

13.     Plaintiff Gady Youmans is a resident of Toombs County, Georgia.

3

14. Rev. Youmans is the Center's founder, Executive Director, and lead teacher.

## DEFENDANTS

15. Vidalia City Schools is a public school district located in Toombs County, Georgia.

16. Vidalia City Schools has the authority to determine which individuals and organizations provide released-time education to students within the district.

17. Defendant Sandy Reid is and was at all relevant times the Superintendent of Vidalia City Schools.

18. Defendant Reid has supervisory responsibility for determining which individuals and organizations are qualified to provide released-time education to students at Vidalia City Schools.

19. Defendants Andy Blount, Sadia Ajohda, Brittney Black, Fred Godbee, and Julee Torrance were each elected to the Board. The Board approves the Vidalia City Schools budget, establishes the district's policies and goals, and hires the superintendent.

20. Defendant Andy Blount is and was at all relevant times a member of the Board, which is located in Toombs County, Georgia. He resides in Toombs County, Georgia.

21. Defendant Sadia Ajohda is and was at all relevant times a member of the Board. She resides in Toombs County, Georgia.

22. Defendant Brittney Black is and was at all relevant times a member of the Board. She resides in Toombs County, Georgia.

23. Defendant Fred Godbee is and was at all relevant times a member of the Board. He resides in Toombs County, Georgia.

24. Defendant Julee Torrance is and was at all relevant times a member of the Board. She resides in Toombs County, Georgia.

25. As members of the Board, Defendants Blount, Ajohda, Black, Godbee, and Torrance each have supervisory authority to determine which individuals and organizations may provide released-time education to the students at Vidalia City Schools.

## FACTUAL ALLEGATIONS

### *Rev. Youmans founded the Center to pursue a calling in educational ministry.*

26. Rev. Youmans founded the Center in 2013 to pursue his calling in educational ministry.

27. Rev. Youmans believes that teaching is more than a job, hobby, or interest—it is a distinct role for edification of the church recognized by the Bible. Ephesians 4:11; 1 Corinthians 12:27–31.[1]

28. Because of the essential nature of the educator's role for the church, Rev. Youmans believes that religious teachers must hold themselves to high standards of accountability. James 3:1; 1 Timothy 4:16.

29. In recognition of these standards, and to best prepare for his calling of vocational ministry, Rev. Youmans has received several degrees in higher education.

30. He has earned Bachelor of Arts degrees in Christian Studies and Psychology from Brewton-Parker Christian University, Master of Arts degrees in Christian Education and Biblical Counseling from Southwestern Baptist Theological Seminary, and a Doctorate in Educational Ministry from Southwestern Baptist Theological Seminary.

31. Rev. Youmans is currently in the dissertation phase of his Ph.D. program in Applied Theology at Midwestern Baptist Theological Seminary.

---

[1] Southern Baptist Convention, *Baptist Faith and Message 2000* (Jun. 14, 2000), https://bfm.sbc.net/wp-content/uploads/2024/08/BFM2000.pdf.

32.    Rev. Youmans has been ordained as a minister through a Southern Baptist congregation.

33.    In 2013, Rev. Youmans learned about released-time education from a friend. He understood such a program would fit squarely with his credentials and ministry calling.

34.    After receiving funding from friends, ministers, and churches in the area, Rev. Youmans founded the Center in 2013 to provide Christian education to students in his home of Toombs County and Montgomery County, Georgia.

### Rev. Youmans and the Center provide religious instruction to high school students in Toombs County.

35.    The Center operates a released-time education program for high school students in Toombs County, Georgia.

36.    Released-time education is a program that allows public schools to release students for part of the school day to attend religious instruction with parental approval.

37.    In 1952, the Supreme Court recognized the constitutionality of released-time education in *Zorach v. Clauson*, 343 U.S. 306 (1952). The Court upheld the constitutionality of a released-time program under the Establishment Clause because the religious instruction did not occur in the classroom, the program received no public funds, and it was voluntary with parental consent. *Id.* at 309, 311–12, 315.

38.    The Center operates under this constitutional framework.

39.    The State of Georgia is also considering a bill that would require all public schools to institute policies related to released-time education.

40.    On March 29, 2026, the Georgia Senate passed the Student Character Development Act, HB 451. If passed by the Georgia House and signed by the Governor, the law will require public schools, by August 1, 2026, to "adopt a policy

6

that permits all students to be excused from school to attend a released-time course for at least one hour per school week." H.B. 451, 158th General Assemb., 2d Sess. (Ga. 2026).

41.    The Center provides Christian education for students at Paul Anderson High School, a private school in Vidalia, Georgia, and it operates a released-time education program for Vidalia High, a public school.

42.    In 2014, shortly after Rev. Youmans founded the Center, the principal of Vidalia High requested that the ministry provide released-time education for the school.

43.    After discussing the opportunity with the principal, on December 9, 2014, Rev. Youmans presented a written and oral proposal to the Board for a released-time education program for Vidalia High.[2] The proposal is attached as Exhibit A.

44.    Through the proposal, Rev. Youmans explained to the Board that the Center exists "to prepare students academically, spiritually, emotionally, and socially for God's call on their lives." Ex. A. He explained that the Center would provide "non-denominational, conservative evangelical education." *Id.*

45.    On December 19, 2014, the Board approved the proposal.[3]

46.    Pursuant to this approval, the Center began teaching classes to Vidalia High students in the Spring 2015 semester, and it has continued to teach courses for students at the school every semester since.

47.    The Center also provided released-time education for two other high schools: Toombs County High School and Montgomery County High School.

---

[2] Vidalia City Schools, *Vidalia City Board of Education Meeting*, https://perma.cc/U363-V39S (Dec. 9, 2014).

[3] Vidalia City Schools, *Vidalia City Board of Education Called Meeting*, https://bit.ly/4n62LyW (Dec. 19, 2014).

7

48. The Center stopped providing released-time education for Toombs County High in 2021 because of scheduling conflicts.

49. The Center stopped providing released-time education for Montgomery County High in 2020, because the school did not want students to go off campus during the Covid-19 pandemic; and, after the height of the pandemic, the Center could not provide instruction close enough to the school.

50. The Center currently offers five classes to Vidalia High students: Biblical Finances, Survey of the Old Testament, Survey of the New Testament, Biblical Psychology, and Comparative Religions.

51. Rev. Youmans teaches each of these classes.

52. The courses appear in Vidalia High's course list, and students register for Center courses just like they do for other courses.

53. To take a Center course, a student's parent must sign a form consenting to the student taking religious courses off campus.

54. Center classes are taught within Vidalia High's block class schedule.

55. The Center teaches, on average, around twenty Vidalia High students each semester.

56. Students receive elective credit for the Center courses that they pass, which go toward their graduation requirements.

57. Students may also receive dual-enrollment credit from Brewton-Parker Christian University, a private Southern Baptist university, for the Center's Survey of the Old Testament, Survey of the New Testament, and Comparative Religion courses.

58. Rev. Youmans teaches Center classes for Vidalia High students at a church located within two miles of Vidalia High School.

59. The Center shuttles students with parental consent to and from the church building for Center classes, and students also may drive themselves.

60.    As Executive Director of the Center, Rev. Youmans is responsible for all communication with Vidalia City Schools.

61.    His responsibilities as Executive Director also include curriculum development, fundraising, financial recordkeeping, website design, and coordination with the Center's Board of Directors.

***Rev. Youmans and the Center provide a distinctly Christian education.***

62.    The Center exists for a distinctly Christian purpose.

63.    Its mission is to "make disciples that make disciples through offering Biblical education in the public schools in our community."[4]

64.    The Center teaches every course from an evangelical Christian perspective based on orthodox Christian doctrine and the supreme authority of the Bible.

65.    The Center's religious instruction is an expression of the ministry's sincerely held religious beliefs.

66.    Rev. Youmans' instruction at the Center is an expression of his sincerely held religious beliefs.

67.    The Center operates in accordance with Rev. Youman's "Philosophy of Christian Education," which is attached as Exhibit B. Rev. Youmans developed the document through his doctoral program and has submitted it to the universities where he teaches.

68.    The Center's aim is not just for students to learn the course materials. The Center seeks "life transformation via learning the content of Scripture coupled with the practical insight of application in one's life in order to become more like Christ in our thinking, speaking, and doing as a born-again believer." Ex. B at 2.

---

[4] Sweet Onion Christian Learning Center, https://www.sweetonionclc.org/ (last visited May 4, 2026).

9

69. Christian students often take Center courses to expand their understanding of Christian doctrine and grow in their faith in Jesus Christ.

70. While the Center's teaching is grounded in the Christian faith, non-Christians are welcome to take Center courses and have in the past.

71. While Rev. Youmans will not contradict orthodox Christian teaching, the curriculum design, content, and delivery of teaching take into consideration the philosophical presuppositions of the learners.

72. Rev. Youmans developed the curriculum for each of the Center's courses.

73. The core reading material for each course is the Bible, while the Center also uses supplemental textbooks.

74. Students read a significant amount of scripture through Center courses. For example, students read nearly 500 pages in the Survey of the Old Testament course.

75. Students are required to keep reading logs, and they are graded based on their performance on quizzes, papers, and exams.

76. Along with his role at the Center, Rev. Youmans is the lead pastor at Word of Life Baptist Church in Vidalia, Georgia.

77. As a pastor and educator, Rev. Youmans provides religious counsel and ministry to his students and their parents who seek it.

78. This often includes answering personal questions of faith and explaining how Biblical principles might apply to a student's life circumstances.

79. Based on their appreciation for the education they received at the Center, many students have attended Rev. Youmans' church for further teaching and fellowship.

***The Establishment Clause prohibits Vidalia High from interfering with Rev. Youmans and the Center's religious instruction.***

80.    Because the Establishment Clause prohibits the government from interfering with or controlling a private entity's religious instruction, the Center operates independently of Vidalia High.

81.    The Center and Vidalia City Schools have never entered into a written contract.

82.    The Center is funded entirely by private donors, who consist of local community members and churches.

83.    Rev. Youmans is not an employee of Vidalia City Schools.

84.    Vidalia City Schools do not provide any funding or other benefits to Rev. Youmans or the Center for the instruction of Vidalia High students.

85.    Rev. Youmans has no special access to Vidalia City Schools property. He does not have a security badge, and to enter Vidalia High, he must check in with the front office like any other member of the public.

86.    Vidalia High has never overseen or reviewed the Center's course curriculum.

87.    Rev. Youmans does not have a Vidalia City Schools email account.

88.    Rev. Youmans does not have access to any Vidalia City Schools software or Vidalia High's student information system.

89.    Rev. Youmans requested access to the Vidalia High student information system to more easily import grades and attendance. Because he is not an employee, the school denied his request.

90.    Rev. Youmans' contact with Vidalia City Schools for the administration of the released-time education program is limited to emailing grade and attendance information and discussing the Center's course availability with Vidalia High guidance counselors.

11

91. The only Vidalia City Schools staff with whom the Center regularly interacts for the administration of released-time education are the Vidalia High guidance counselors.

92. Aside from including Center courses in the Vidalia High course list, Vidalia City Schools does not advertise or promote the Center in any way.

93. Vidalia High only permits students to take Center courses if a parent consents.

### *Rev. Youmans and the Center strengthen the Vidalia community.*

94. The Center and Rev. Youmans have had a tremendous impact on the Vidalia community.

95. Students frequently report that the Center has helped them deepen their commitment to faith, gain support through relationships with other students at the Center, pursue careers in vocational ministry, and find meaning and encouragement through difficult times.

96. The Center also uniquely impacts the community through the financial responsibility students learn through the Biblical Finance course.

97. Many students report that the financial literacy they gained through the course helped them achieve goals they previously thought were impossible, such as going to college, pursuing their desired career path, or paying off debts.

98. Many students view Rev. Youmans as a personal minister to them and attend the church where he pastors.

99. The vast majority of students who take Center courses do so because another student or a parent recommended them.

100. Since the Center was founded in 2013, only one parent has removed a student from a Center course—after learning that the Center does not exclusively use the King James Version of the Bible.

101.    This incident occurred in either 2019 or 2020, and the student attended Montgomery County High School, not Vidalia High.

102.    Aside from this single incident, to Plaintiffs' knowledge, no parent has approached the ministry with complaints about the Center or Rev. Youmans' instruction.

103.    Since the Center was founded in 2013, to Plaintiffs' knowledge, no Vidalia City Schools employee has approached the ministry with complaints about the Center or Rev. Youmans' instruction.

104.    Since the Center was founded in 2013, to Plaintiffs' knowledge, no student has raised serious complaints about the Center or Rev. Youmans' instruction. About twice a semester, Rev. Youmans requires his students to submit reviews and feedback on their Center courses.

105.    The feedback is almost always constructive and usually is focused on informing Rev. Youmans of a student's learning style and individual needs.

106.    To Plaintiffs' knowledge, the most serious complaint the Center received from a student was that the coursework was too difficult.

### *Rev. Youmans' comments about educational issues and other matters of public concern.*

107.    Through Rev. Youmans' years of university training for professional education, he has developed a personal philosophy of education.

108.    Rev. Youmans believes that teachers should have the freedom to tailor their teaching styles to best fit their skills and students' needs.

109.    Rev. Youmans believes that the bureaucracy and legal regime imposed on public schools often stifles this form of educational freedom.

110.    Rev. Youmans founded the Center to ensure that students in public schools had an opportunity to receive an education in an environment of educational freedom.

111.   Rev. Youmans also cares deeply about financial responsibility and literacy. He believes that every person's resources are a gift from God, and each person has a responsibility to steward those resources in a godly manner. Psalm 24:1; Deuteronomy 8:17–18; Proverbs 10:22.

112.   He believes these principles also apply to the government, meaning it should not engage in wasteful spending but should steward taxpayers' resources wisely and spend modestly.

113.   As an ordained minister and pastor, Rev. Youmans has strong views on how various biblical principles apply to community, social, and political issues, beyond issues of financial stewardship.

114.   Because of Rev. Youmans' training on educational and theological issues, he believes he can provide a unique and valuable perspective to his community.

115.   He often shares his views about education, politics, economic issues, and religion on his personal Facebook account.

116.   While his messaging on these issues is sometimes pointed, it is always Rev. Youmans' intent to help his community better understand the issues, not to denigrate community members.

117.   In September 2025, the Board announced an intent to increase property taxes to fund Vidalia City Schools.[5]

118.   Rev. Youmans opposed the tax increase, and on September 12, 2025, he made two Facebook posts discussing it, which are at issue in this case.

---

[5] Kathy Hilt, *Vidalia BOE Announces Proposed Property Tax Increase*, Se. Ga. Today, Sep. 12, 2025, https://bit.ly/4mKziKD.

14

119.    The first post is as follows:



**Gady Youmans**
Sep 12, 2025 ·

Hello Vidalia, thank you for wanting to RAISE PROPERTY TAXES. City school board, please stop. You don't need more money. Just stop. Please. Property values are ticking down, so to make up for your budget shortfall you raise the rate. STOP. So many of my teacher friends in Vidalia have told me "The BoE office keeps hiring admins we don't need with near $100,000 salaries." Can we just cut one or two of them and not need the increase?

120.    The second post is as follows:

**Gady Youmans**
Sep 12, 2025 ·

Vidalia City Schools raising property taxes... BUT, last year the Top 20 Highest paid employees made a combined $2.2Million dollars. 17 admins, 2 coaches, 1 teacher. I'm 💯 okay with qualified people making a good living doing a great job. BUT... this is the top 20 of over 400 people paid last year. This is also SALARY. This doesn't include health insurance, pension/retirement, and around 2-3 months off each year.... there are 400 ppl paid last year. Thats roughly 1 employee per 6-7 students.... ALSO doesn't include "contracted labor" for a host of things for people not directly employed by the system thus not public record.



| Salary | Travel | Organization | Fiscal Year |
|---|---|---|---|
| $151,973.83 | $98.25 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $131,985.02 | $8,122.08 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $125,531.56 | $1,258.86 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $120,737.92 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $116,531.56 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $115,130.79 | $618.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $111,631.64 | $1,102.84 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $111,531.64 | $1,978.68 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $108,842.08 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $107,079.76 | $728.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $104,531.56 | $3,550.66 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $103,498.86 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $102,673.52 | $86.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $102,531.64 | $3,751.89 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $100,612.30 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $100,245.22 | $883.64 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $96,945.67 | $57.77 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $95,844.40 | $0.00 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $95,160.94 | $1,055.82 | CITY OF VIDALIA BOARD OF EDU... | 2024 |
| $91,063.64 | $6,738.08 | CITY OF VIDALIA BO... | |

CONTACT US

121.    Rev. Youmans replied to a comment on the second post as follows:

15



122.    Rev. Youmans' intent in quoting his student was not to denigrate any teacher at Vidalia High, but instead to vent his frustration with the proposed tax increases, which in his view would exacerbate bureaucratic requirements that stifle dedicated and creative public teachers, including those at Vidalia High.

123.    According to Rev. Youmans' Facebook analytics, as of March 23, 2026, there were 25 views on the first post and 32 views on the second.

***Vidalia City Schools punished Rev. Youmans and the Center for their speech.***

124.    On February 5, 2026, Superintendent Reid sent Rev. Youmans an email informing him that Vidalia City Schools would no longer permit the Center to operate the released-time education program for Vidalia High students. The email is attached as Exhibit B.

125.    The email states, "Over the past several months, our system has been reviewing how we provide these types of learning opportunities for students …. After much discussion and careful consideration, we have recently made the decision to move in a different direction to offer similar opportunities in a way that fits better for our students and school structure beginning next school year. Our Board of Education has been informed of this decision." Ex. C.

126. Rev. Youmans was shocked to receive this news. He had received no complaints from students, parents, or Vidalia City Schools staff. And he received no notice before receiving the email that the district was even considering ending its relationship with the Center.

127. Rev. Youmans requested to meet with Superintendent Reid and then did so on February 19, 2026, to discuss the decision.

128. Before that meeting, Rev. Youmans had never met or spoken to Superintendent Reid.

129. When the discussion began, Superintendent Reid explained that she had decided to no longer allow the Center to provide released-time education to Vidalia High students and that the Board had voted to approve her decision.

130. She explained that several Vidalia City Schools staff members and families had complained to the Board about Rev. Youmans' Facebook comments regarding the effectiveness of teachers within the school system.

131. She stated that staff members were highly offended by the comments, so the Board asked Superintendent Reid to review different options. According to Superintendent Reid, the Board did not want students to miss out on the kind of instruction the Center provided, but it believed there was a "misalignment" with the Center based on Rev. Youmans' Facebook posts.

132. Superintendent Reid stated that she started a committee within Vidalia High to evaluate all of the school's options. She did not identify who was on this committee.

133. She stated that she had been looking into Rev. Youmans' social media posts and alternative options to the Center since October 2025.

134. Rev. Youmans was unaware of any posts that denigrated Vidalia City Schools teachers, as he is friends with several and holds them in high esteem; he therefore asked Superintendent Reid which social media posts were at issue.

135. Superintendent Reed explained that many people took offense at how Rev. Youmans addressed the "tax issue" in his social media posts in a way that they felt was "attacking to the school." She admitted that he had a First Amendment right to discuss the "tax issue," but said the comment that "was really wrong" and "really crossed over" was one stating that Vidalia High teachers "don't even teach."

136. Upon information and belief, the posts relating to the "tax issue" Superintendent Reid referenced are those at ¶¶ 119–20.

137. Upon information and belief, the comment that Superintendent Reid described as "really wrong" is that at ¶ 121.

138. Superintendent Reid told Rev. Youmans that the post "was a big deal at the time" and that she received numerous screenshots of the post and an "outpouring" of complaints from staff and community members.

139. Superintendent Reid explained that she recommended to the Board that Vidalia High no longer allow the Center to provide released-time education courses because Rev. Youmans' Facebook posts upset Vidalia City Schools staff and parents in the community.

140. Only when Rev. Youmans pressed Superintendent Reid to explain how his Facebook posts justified her decision did she pivot to stating there were "multiple reasons" for the decision.

141. Aside from the Facebook posts, the only other possible reason Superintendent Reid provided for the decision was that the committee learned of parents in the past who had difficulty "accepting some things" and had pulled their children from Center courses.

142. Rev. Youmans responded that a parent had only pulled a student from his course once, and that one instance was in Montgomery County.

143. Superintendent Reid replied that she did not want to get into "teasing apart."

18

144. Upon information and belief, Superintendent Reid was referring to the parent in Montgomery County who removed her student from a Center course in 2019 or 2020 because the Center did not exclusively use the King James Version of the Bible. *See supra* ¶ 100.

145. Superintendent Reid confirmed that the decision had nothing to do with the Center's material, funding, transportation, or safety.

146. Rev. Youmans asked whether Vidalia City Schools would immediately terminate a district-employed teacher who made a similar social media post.

147. Superintendent Reid replied that the school would not fire a teacher for such a post because teachers are protected by "due process procedures" and "fair dismissal rights." Instead, she said the school would likely require the teacher to take the post down or engage in remediation.

148. Superintendent Reid explained that, as an alternative to released-time education at the Center, Vidalia High would offer dual-enrollment credit courses through Brewton-Parker Christian University.

149. Brewton-Parker Christian University is a Southern Baptist institution that teaches courses from a Christian perspective.

150. Rev. Youmans expressed his disappointment with the district's decision, and Superintendent Reid said she would inform the Board that Rev. Youmans requested that it reverse its decision.

151. On February 23, 2026, Superintendent Reid emailed Rev. Youmans that she had raised his concerns with each member of the Board, but the Board decided not to reverse its decision. Ex. C.

152. On November 11, 2025, the Board held a work session where it received a report from Superintendent Reid.

153. During that work session, Superintendent Reid provided a report on the Center.

19

154.    The official minutes for that report state as follows:

. . . [Superintendent Reid] noted that parents have previously expressed concerns about the course content, specifically a perception that some instruction reflected a particular interpretation of the Bible rather than presenting information in a neutral or well-balanced manner. A few parents have chosen to remove their children from the class for this reason, though the majority of enrolled students complete the course. She also reported a recurring concern related to the instructor, who has publicly expressed criticism of public schools and has posted negative comments about the district and staff on social media. The Board briefly reviewed these issues and inquired about possible options for the course. Superintendent Reid stated that she will continue gathering information and will provide an update at an upcoming Board meeting.[6]

155.    Each Board member was present at the November 11 work session. *Id.*

156.    Upon information and belief, the reference in Superintendent Reid's report to parents who removed their children from Center courses refers to the parent in Montgomery County who removed her student from a Center course because the Center did not exclusively use the King James Version of the Bible. *See supra* ¶ 100.

157.    Upon information and belief, the "negative comments" and "criticism of public schools" Superintendent Reid referenced in her report refer to the posts and comments at ¶¶ 119–21.

158.    Upon information and belief, at some point after the November 11 work session, Superintendent Reid recommended to the Board that it rescind Rev. Youmans' and the Center's permission to provide released-time education to Vidalia High students.

159.    Upon information and belief, at some point after the November 11 work session, the Board voted to approve Superintendent Reid's recommendation to rescind Rev. Youmans' and the Center's permission to provide released-time education.

---

[6] Vidalia City Schools, *Vidalia City Board of Education Work Session*, https://perma.cc/V47U-SP8M (Nov. 11, 2025).

160. Upon information and belief, the Board approved of Superintendent Reid's recommendation based upon the rationale she provided at the November 11 work session and the rationale she provided to Rev. Youmans in their February 19 meeting.

161. Because the Board decided to rescind Rev. Youmans' and the Center's permission to provide released time education to Vidalia High students, that decision became the official policy of Vidalia City Schools.

162. Neither the Board nor Superintendent Reid provided Rev. Youmans or the Center any notice that the Board was considering rescinding Rev. Youmans' and the Center's permission to provide released-time education to Vidalia High students.

163. The Center is continuing to teach Vidalia High students through the end of the Spring 2026 semester; however, students are currently unable to register for any future courses through the Center.

164. Upon information and belief, Defendants have not punished any other individual who has spoken in favor of raising taxes for Vidalia City Schools or in support of the school system.

### Vidalia City Schools' decision harms the community, the Center, and Rev. Youmans.

165. Now that Vidalia City Schools has barred students from taking released-time courses at the Center, students no longer have access to the Center's uplifting religious educational environment.

166. Students who wish to take religious education courses must now enroll in a dual-enrollment credit course at Brewton-Parker Christian University.

167. Unlike courses at the Center, though, dual-enrollment courses cost the student university tuition, they are only available online or at the Brewton-Parker

campus, and there are no free transportation opportunities available to the Brewton-Parker campus, located eleven miles from Vidalia High.

168. The Center provides released-time education only to Vidalia High students; therefore, due to Vidalia City Schools' decision, the Center will no longer be able to provide released-time education.

169. Without the ability to provide released-time education, the Center's mission to provide religious education to public school students will be stifled.

170. Donors give to the Center because they want local public-school students to have access to religious instruction through released-time education. Because the Center will no longer provide that education, donors will cease funding the ministry.

171. The Center's only funding source is private donations; without them, the Center will have to close.

172. The primary source of income for Rev. Youmans' family of five is the Center.

173. Since the cancellation, numerous individuals in the Vidalia community, including Center donors, have approached Rev. Youmans and questioned him about the loss of the released-time education program with Vidalia High.

174. Some of these individuals have questioned whether the cancellation was due to wrongdoing or impropriety by Rev. Youmans.

175. Because of the cancellation, Rev. Youmans has lost close personal friends who no longer wish to be associated with him or the Center.

176. By losing the ability to pursue their mission because of their speech, Rev. Youmans and the Center have been humiliated, and their reputation in the community has been tarnished.

22

## FIRST CAUSE OF ACTION
## FIRST AMENDMENT: CONTENT AND VIEWPOINT DISCRIMINATION (42 U.S.C. § 1983)

177.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

178.   The First Amendment protects Plaintiffs' ability to express their views about the propriety of tax increases and the state of public education.

179.   The First Amendment protects Plaintiffs' ability to provide religious instruction from a particular religious viewpoint.

180.   The First Amendment protects Plaintiffs' right to be free from content- and viewpoint-based discrimination.

181.   The First Amendment protects against the government's imposition of retribution based on what a citizen chooses to think, say, or publish.

182.   By expressing his views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education, Rev. Youmans was engaged in constitutionally protected activity.

183.   By providing religious instruction from a particular religious viewpoint, Plaintiffs were engaged in constitutionally protected activity.

184.   Defendants engaged in content and viewpoint discrimination by punishing Plaintiffs for Rev. Youmans' criticism of a tax increase to fund Vidalia Public Schools and the state of public education, while refraining from punishing citizens who hold opposite views.

185.   Defendants engaged in content and viewpoint discrimination by punishing Plaintiffs for their provision of religious instruction from a particular religious viewpoint while refraining from punishing citizens from a different religious viewpoint or no religious viewpoint.

186.   Defendants committed content and viewpoint discrimination through the permission structure for released-time education at Vidalia City Schools. By

23

permitting the Center to engage in released-time education, an expressive activity, Defendants created a limited or designated public forum, and Defendants committed content and viewpoint discrimination in this forum.

187.    Defendants prohibited Plaintiffs from providing released-time education to Vidalia High students specifically to suppress Rev. Youmans' criticism of a tax increase to fund Vidalia Public Schools and the state of public education.

188.    Defendants prohibited Plaintiffs from providing released-time education to Vidalia High students specifically to suppress Plaintiffs' religious instruction from a particular religious viewpoint.

189.    Defendants' decision to prohibit Plaintiffs from providing released-time education to Vidalia High students did not advance any legitimate interest, let alone a compelling state interest.

190.    Defendants lacked a rational basis for prohibiting Plaintiffs from providing released-time education to Vidalia High students.

191.    Defendants' decision to prohibit Plaintiffs from providing released-time education to Vidalia High students was not narrowly tailored to advance any legitimate state interest.

192.    Defendants' decision to prohibit Plaintiffs from providing released-time education to Vidalia High students cannot withstand rational basis review, intermediate scrutiny, or strict scrutiny. Defendants' actions thus violated Plaintiffs' clearly established right to free speech as guaranteed by the First Amendment of the United States Constitution.

## SECOND CAUSE OF ACTION
## FIRST AMENDMENT: RETALIATION (42 U.S.C. § 1983)

193.    Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

194. The First Amendment protects Plaintiffs' ability to express their views about the propriety of tax increases and the state of public education.

195. The First Amendment protects Plaintiffs' ability to provide religious instruction from a particular religious perspective.

196. The First Amendment prohibits the government from rescinding a benefit in retaliation for the exercise of any First Amendment right.

197. In addition to providing a valuable service to the community, Plaintiffs received the valuable government benefit of permission to provide released-time education to Vidalia High students.

198. By expressing his views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education, Rev. Youmans engaged in constitutionally protected activity.

199. By providing religious instruction from a particular religious perspective to Vidalia High students, Rev. Youmans and the Center engaged in constitutionally protected activity.

200. Defendants retaliated against Plaintiffs by prohibiting them from providing released-time education to Vidalia High students.

201. Defendants' action in prohibiting Plaintiffs from providing released-time education to Vidalia High students was motivated and substantially caused by Rev. Youmans' exercise of his right to engage in constitutionally protected activity, including the right to express his views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education.

202. Defendants would not have made the decision to prohibit Plaintiffs from providing released-time education to Vidalia High students absent Rev. Youmans' expression of his views on the propriety of a tax increase to fund Vidalia City Schools and the state of public education.

203.   Superintendent Reid's claim that Defendants prohibited Plaintiffs from providing released-time education to Vidalia High students because of Plaintiffs' religious instruction from a particular perspective contradicts her statements that the decision was based on Rev. Youmans' Facebook posts and not on the Center's course material. That contradiction, the timing of the Superintendent's investigation of the Center, and her overall remarks show that this claim is a pretext.

204.   In the alternative, if Defendants did prohibit Plaintiffs from providing released-time education because of the nature of Plaintiffs' religious instruction, and that was not a pretext, then Defendants still engaged in unlawful retaliation against Plaintiffs for exercising the constitutional right of free speech.

205.   By prohibiting Plaintiffs from providing released-time education to Vidalia High students, Defendants unlawfully retaliated against Plaintiffs for exercising the constitutional right of free speech.

206.   Defendants' retaliatory actions against Plaintiffs were sufficient to deter a person of ordinary firmness from exercising his constitutional rights.

207.   Defendants' retaliatory and unconstitutional actions taken against Plaintiffs violated their clearly established right of freedom of speech as guaranteed by the First Amendment to the United States Constitution.

208.   Rev. Youmans spoke as a private citizen on a matter of public concern.

209.   Neither Plaintiffs' expression of their views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education, nor their religious instruction from a particular religious viewpoint, has prevented Defendants from efficiently providing services to the public, or even threatened to do so.

210.   Plaintiffs' interest in expressing their views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education, and

their interest in providing religious instruction from a particular religious viewpoint, outweigh any interest of Defendants in suppressing those views.

## THIRD CAUSE OF ACTION
## FIRST AMENDMENT: COMPELLED SPEECH (42 U.S.C. § 1983)

211. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

212. The First Amendment protects Plaintiffs' ability to refrain from speaking words to which they object.

213. The First Amendment prohibits the government from requiring someone to speak words to which he objects as a condition of receiving a valuable government benefit.

214. Because Plaintiffs' mission is to provide religious instruction from an Evangelical Christian perspective, they object to providing instruction from a neutral point of view towards religion or from any point of view that contradicts Evangelical Christian doctrine.

215. Defendants compel Plaintiffs to speak words to which they object by requiring them to provide instruction from a neutral point of view towards religion as a condition of receiving the valuable government benefit of permission to provide released-time education to Vidalia High students.

216. By conditioning this benefit on Plaintiffs speaking certain words to which they object, Defendants compel Plaintiffs to speak in violation of their clearly established right to free speech as guaranteed by the First Amendment of the United States Constitution.

## FOURTH CAUSE OF ACTION
## FIRST AMENDMENT: FREE EXERCISE OF RELIGION (42 U.S.C. § 1983)

217. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

27

218. Plaintiffs exercise their religion in various ways, including by providing religious instruction to Vidalia High students.

219. Plaintiffs' students exercise their religion in various ways, including by taking the Center courses to strengthen their faith and receive instruction from staff who share their religious beliefs and worldview.

220. Defendants substantially burden Plaintiffs' and their students' religious exercise by requiring Plaintiffs to abandon their instruction from a particular religious viewpoint as a condition to participating in a released-time education program with Vidalia High.

221. The Free Exercise Clause protects against indirect coercion or penalties on the free exercise of religion, not just outright prohibitions.

222. So Defendants cannot disqualify otherwise eligible religious observers from government programs or benefits, including the provision of released-time education, solely because of their religious character or on the basis of their religious exercise.

223. The ability to provide released-time education is a public program and benefit.

224. Plaintiffs are otherwise qualified to receive this benefit.

225. Defendants' actions, policy, and practice identify and exclude Plaintiffs and their students from this benefit because of their religious character, beliefs, and exercise.

226. Defendants' actions, policy, and practice are not neutral or generally applicable because they target and exclude Plaintiffs and their students solely because of their religious character, beliefs, and exercise.

227. Defendants' actions, policy, and practice are not neutral or generally applicable because Defendants treat comparable secular activity more favorably than Plaintiffs' religious exercise.

28

228. Defendants' actions, policy, and practice are not neutral or generally applicable because Defendants treat comparable religious exercise more favorably than Plaintiffs' religious exercise.

229. Defendants' actions, policy, and practice are not neutral or generally applicable because Defendants do not strictly enforce their neutrality requirement against other Christian educational institutions with similar views to Plaintiffs'.

230. Defendants lacked a rational basis for prohibiting Plaintiffs from providing released-time education to Vidalia High students.

231. Defendants' decision to prohibit Plaintiffs from providing released-time education to Vidalia High students was not narrowly tailored to advance a compelling state interest.

232. Defendants' decision to prohibit Plaintiffs from providing released-time education to Vidalia High students cannot withstand rational basis review, intermediate scrutiny, or strict scrutiny. Defendants' actions thus violated Plaintiffs' clearly established right to free speech as guaranteed by the First Amendment of the United States Constitution.

## FIFTH CAUSE OF ACTION
## VIOLATION OF THE GEORGIA RELIGIOUS FREEDOM RESTORATION ACT (Ga. Code § 50-15A-1)

233. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

234. Under the Georgia Religious Freedom Restoration Act, the government may not substantially burden a person's exercise of religion, even if that burden results from a rule of general applicability, unless it demonstrates that the application of that burden is (1) in furtherance of a compelling governmental interest; and (2) the least restrictive means of furthering such compelling governmental interest.

29

235. Plaintiffs exercise their religion in various ways, including by providing religious instruction to Vidalia High students.

236. Plaintiffs' students also exercise their religion in various ways, including by taking the Center courses to strengthen their faith and receive instruction from staff who share their religious beliefs and worldview.

237. Defendants substantially burden Plaintiffs' and their students' religious exercise by requiring Plaintiffs to abandon their instruction from a particular religious viewpoint as a condition to participating in a released-time education program with Vidalia High.

238. Defendants' actions, policy, and practice neither serve a compelling interest nor are they narrowly tailored to achieve any purported compelling interest.

239. Defendants' actions, policy, and practice therefore violate the Georgia Religious Freedom Restoration Act, as applied to Plaintiffs' provision of released-time education from a particular religious perspective.

## SIXTH CAUSE OF ACTION
## UNCONSTITUTIONAL CONDITIONS (42 U.S.C. § 1983)

240. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

241. The unconstitutional conditions doctrine prohibits the government from conditioning the receipt of a government benefit on the relinquishment of a constitutional right.

242. The government violates the unconstitutional conditions doctrine when it pressures a person to give up constitutional rights in order to obtain a public benefit.

243. The government also violates this doctrine when it denies a person a benefit because that person exercised his or her constitutional rights.

244. By expressing his views about the propriety of a tax increase to fund the Vidalia City Schools and the state of public education, Rev. Youmans engaged in constitutionally protected activity.

245. Because Rev. Youmans expressed his views about the propriety of a tax increase to fund Vidalia City Schools and the state of public education, Defendants rescinded from Plaintiffs the valuable government benefit of permission to provide released-time education to Vidalia High students.

246. By providing religious instruction from a particular religious perspective to Vidalia High students, Plaintiffs engaged in constitutionally protected activity.

247. Because Plaintiffs provided religious instruction from a particular religious perspective, Defendants rescinded from Plaintiffs the valuable government benefit of permission to provide released-time education to Vidalia High students.

248. It is Defendants' position that as long as Plaintiffs persist in the exercise of their free speech and religious expression, they cannot obtain the valuable government benefit of permission to provide released-time education to Vidalia High students.

249. By targeting Plaintiffs for exclusion from released-time education, Defendants seek to coerce a result they cannot command directly.

250. Defendants' decision therefore violates the unconstitutional conditions doctrine.

## SEVENTH CAUSE OF ACTION
### FOURTEENTH AMENDMENT: VAGUENESS (42 U.S.C. § 1983)

251. Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

252. The Due Process Clause of the Fourteenth Amendment prohibits the government from censoring speech or outlawing behavior pursuant to vague

standards that grant unbridled discretion to government officials to arbitrarily prohibit some expression and action and that fail to give speakers and actors sufficient notice whether their speech or actions violate the law.

253.    The standards that Defendants applied to retaliate against Plaintiffs included vague and undefined terms such as "offensive," "attacking to the school," "neutral," and "well-balanced," thereby permitting Defendants to use their unbounded discretion to punish disfavored speech and viewpoints on district policy, religion, and other subjects.

254.    Defendants' standards contain no guidelines to govern the decisions Defendants make in applying and enforcing these terms, thereby permitting Defendants to use their unbounded discretion to punish disfavored speech and viewpoints.

255.    Defendants have wielded this unbounded discretion to punish Plaintiffs for their disfavored speech on the Board's proposed tax increase and their religious viewpoint.

256.    Citizens of common intelligence must guess as to whether their desired speech or actions will violate the vague terms of Defendants' standards; thus, the standards give insufficient warning and notice as to what expression and actions are prohibited.

257.    Therefore, Plaintiffs' rights and the rights of all citizens turn on the whim of Defendants, and Plaintiffs and other citizens cannot know whether their desired speech and actions violate those standards.

258.    Thus, as applied to Plaintiffs and facially, Defendants' standards used to retaliate against Plaintiffs violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

**EIGHTH CAUSE OF ACTION**
**FOURTEENTH AMENDMENT: PROCEDURAL DUE PROCESS (42 U.S.C. § 1983)**

259.   Plaintiffs repeat and reallege each of the allegations contained in paragraphs 1 through 176 of this Verified Complaint.

260.   The Due Process Clause of the Fourteenth Amendment prohibits the government from depriving someone of a protected liberty interest without due process of law.

261.   Defendants deprived Plaintiffs of their protected liberty interests in freedom of speech when they rescinded Plaintiffs' permission to provide released-time education to Vidalia High students in retaliation for protected speech.

262.   Defendants deprived Plaintiffs of their protected liberty interests in freedom of religion when they rescinded Plaintiffs' permission to provide released-time education to Vidalia High students in retaliation for religious expression.

263.   Because of the deprivation of these liberty interests, Plaintiffs are no longer able to engage in protected speech and religious expression through released-time education for Vidalia High students.

264.   Defendants did not provide Plaintiffs with any notice before depriving them of their liberty interests.

265.   Defendants did not provide Plaintiffs with any opportunity to present arguments or be heard before depriving them of their liberty interest.

266.   Defendants did not provide Plaintiffs with any opportunity to challenge Defendants' purported factual findings before depriving them of their liberty interests.

267.   As a result of Defendants' actions, Plaintiffs' due process rights under the Fourteenth Amendment to the United States Constitution have been violated.

## PRAYER FOR RELIEF

Plaintiff asks this Court to enter judgment against Defendants and provide the following relief:

A.      A declaratory judgment that Defendants' decision to prohibit Plaintiffs from providing released time education to Vidalia High students violated Plaintiffs' clearly established rights protected by the First and Fourteenth Amendments of the United States Constitution and the Georgia Religious Freedom Restoration Act.

B.      A preliminary and permanent injunction ordering Defendants, their agents, officials, employees, and any other person acting on their behalf to:

      i.   Take appropriate steps to ensure Plaintiffs can continue to provide released-time education to Vidalia High students in the upcoming semesters in the same manner permitted before Defendants' unconstitutional and illegal actions;

      ii.  Refrain from unconstitutionally or illegally limiting in any way Plaintiffs' ability to provide released time education to Vidalia High students because of Rev. Youmans's or the Center's expression or religious exercise;

      iii. Purge from any records in their possession, custody, or control any reference to Defendants' decision to prohibit Plaintiffs from providing released time education to Vidalia High students.

C.      Nominal damages for the violation of Plaintiffs' First and Fourteenth Amendment rights;

D.      Plaintiffs' reasonable attorneys' fees, costs, and other disbursements pursuant to 42 U.S.C. § 1988; and

E.      Any other relief to which Plaintiffs may be entitled.

F.      Retain Jurisdiction of this matter as necessary for enforcing this Court's orders.

Respectfully submitted,

Dated: May 8, 2026

**/s/ Keri M. Martin**

Keri M. Martin (Ga Bar No. 679803)
Hall, Gilligan, Roberts & Shanlever, LLP
7402 Hodgson Memorial Drive,
Suite 110
Savannah, Georgia 31406
Telephone: (912) 777-6636
Email: kmartin@hgrslaw.com

Philip A. Sechler (DC Bar No. 426358)*
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
Telephone: (571) 707-4655
Facsimile: (571) 707-4790
psechler@ADFlegal.org

Mercer S. Martin (Ariz. Bar No. 038138)*
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
mmartin@ADFlegal.org

*Pro Hac Vice Application Forthcoming*

## DECLARATION UNDER PENALTY OF PERJURY

I, Gady Youmans, a citizen of the United States and a resident of the State of Georgia, declare under penalty of perjury under 28 U.S.C. § 1746 that the above is true and correct to the best of my knowledge.

Executed this ___7th___ day of May, 2026, at ___Vidalia___, Georgia.

_Rev. Dr. Gady Youmans_
Plaintiff Gady Youmans
Sweet Onion Christian Learning Center

36

Scanned with
CS CamScanner